# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
No.

| | |
|---|---|
| **MARILYN DULL,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**CROATAN CENTRE OWNERS ASSOCIATION, INC.,**<br><br>   **Defendant.** | **COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

The Plaintiff, Marilyn Dull, by and through her counsel of record, for her Complaint against Defendant Croatan Centre Owners Association, Inc., alleges as follows:

## I. PARTIES

1. Plaintiff Marilyn Dull is a resident of Suffolk, Virginia.

2. Defendant Croatan Centre Owners Association ("Croatan Centre") is a North Carolina non-profit corporation with its registered office located in Elizabeth City, Pasquotank County, North Carolina.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the Plaintiff because she submits to this Court's jurisdiction. This Court has personal jurisdiction over the Defendant because Croatan Centre Owners Association is located in this District and transacts business within this District.

1

5.      Pursuant to 28 U.S.C. § 1391(c)(2), the Defendant, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Croatan Centre Owners Association resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.    FACTUAL ALLEGATIONS

6.      Plaintiff Marilyn Dull requires handicap accessible parking.

7.      On August 4, 2018, Ms. Dull was parked in a handicap accessible parking space at the Croatan Centre shopping center in Nags Head, North Carolina.

8.       As Ms. Dull was exiting her vehicle, she tripped over a ramp that was within the access aisle of the handicap parking space.

9.      When Ms. Dull tripped over the ramp, she lost her balance. She was unable to regain her balance and fell in the ramp.

10.     Ms. Dull was taken by ambulance to the emergency room.

11.     Ms. Dull suffered a painful and severe humerus fracture, which required a lengthy and painful recovery.

## IV.    CAUSES OF ACTION
### CAUSE OF ACTION I
### NEGLIGENCE

12.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

13.     Ms. Dull was a lawful entrant of the Croatan Centre's parking lot ("parking lot").

2

14.     Defendant owed a duty to Ms. Dull to ensure the condition of the parking lot was reasonably safe and give warnings reasonably necessary to inform Ms. Dull of any hidden dangers or unsafe conditions.

15.     Defendant knew or should have known that the ramp was not reasonably safe because it was located within the accessible aisle next to the accessible parking space and was not level with the parking lot.

16.     Defendant breached its duties to Ms. Dull and was negligent in one or more of the following ways:

a.  Defendant and/or its agents failed to design the accessible parking space and accessible aisle to ensure that it was safe;

b.  Defendant and/or its agents failed to design the accessible parking space and accessible aisle in compliance with the Americans With Disabilities Act ("ADA") and North Carolina State Building Code related to accessibility;

c.  Defendant and/or its agents failed to inspect the accessible parking space and accessible aisle to ensure that it was safe;

d.  Defendant and/or its agents failed to inspect the accessible parking space and accessible aisle to ensure that its design complied with the ADA and North Carolina State Building Code related to accessibility;

e.  Defendant and/or its agents failed to correct the unsafe condition of the accessible parking space and accessible aisle;

f.  Defendant and/or its agents failed to warn Ms. Dull of the unsafe condition of the accessible parking space and accessible aisle.

17.     As a direct and proximate cause of Defendant's negligence, Ms. Dull tripped on the ramp and suffered a severe humerus fracture.

18.     As a direct and proximate cause of Defendant's negligence, Ms. Dull suffered

damages, including permanent bodily injuries requiring medical treatment, severe pain, suffering,

and mental anguish.

## CAUSE OF ACTION II
## NEGLIGENCE PER SE FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

19.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if

fully set forth herein.

20.     The Americans with Disability Act ("ADA") was enacted by Congress in 1990 to

"provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities." 42 USCS § 12101, *et seq*.

21.     Title III of the ADA prohibits discrimination in places of public accommodation,

including privately-owned places, and imposes regulations on the design, construction, and

alteration of such places. *See*, 42 USCS § 12181, *et seq*. These regulations ensure that persons

protected by the ADA have the ability to access places of public accommodation safely.

22.     On information and belief, the Croatan Centre was constructed in 1996, which

means the 1991 ADA regulations (revised July 1, 1994) were applicable to the design and

construction of accessible parking spaces and accessible aisles.

23.     The 1991 regulations were codified at 28 CFR 36.101, *et. seq*. The ADA

accessibility guidelines are contained in appendices B and D.

24.     The design and condition of the ramp violates 28 CFR Part 36 Appendix D, which

requires parking spaces and access aisles to be level with surface slopes not exceeding 1:50 (2%)

in all directions.

4

25.     The ADA, including Title III and its regulations and guidelines, is a public safety statute that protects the right of disabled individuals to safely access places of public accommodation.

26.     Ms. Dull, as a person authorized to use handicap accessible parking, belongs to the class of persons intended to be protected by the ADA and regulations.

27.     As a direct and proximate cause of Defendant's violation of the ADA and its regulations, Ms. Dull suffered damages, including permanent bodily injuries requiring medical treatment, severe pain, suffering, and mental anguish.

**CAUSE OF ACTION III**
**NEGLIGENCE PER SE FOR VIOLATION OF NORTH CAROLINA STATE**
**BUILDING CODES RELATED TO ACCESSIBILITY**

28.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

29.     The North Carolina State Building Codes related to accessibility regulate the condition of places of public accommodations to ensure that disabled people have the ability to safely access them.

30.     On information and belief, the Croatan Centre was constructed in 1996, which means that the 1991 Code was applicable to the design and construction of accessible parking spaces and accessible aisles.

31.     The design and condition of the ramp violates applicable North Carolina State Building Codes related to accessibility, including but not limited to those noted by the Chief Accessibility Code Consultant with the North Carolina Insurance Commission. *See* 8/29/2018 email attached as Exhibit A.

5

32.    The North Carolina State Building Codes related to accessibility are public safety statutes that protects the right of disabled individuals to safely access places of public accommodation.

33.    Ms. Dull, as a person authorized to use handicap accessible parking, belongs to the class of persons intended to be protected by the North Carolina State Building Codes related to accessibility.

34.    As a direct and proximate cause of Defendant's violation of the North Carolina Building Codes related to accessibility, Ms. Dull suffered damages, including permanent bodily injuries requiring medical treatment, severe pain, suffering, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays unto the court as follows:

1.    That Plaintiff have and recover judgment against Defendant in an amount in excess of $75,000 for all damages;

2.    That costs of this action be taxed against Defendant;

3.    That Plaintiff receive prejudgment interest from Defendant as of the date of filing of the Original Complaint; and

4.    For such other and further relief as the court deems just and proper.


This the 27th day of May, 2021.

Respectfully Submitted,

**THE PAYNTER LAW FIRM PLLC**

/s/ Sara C. Willingham_____
Sara C. Willingham
N.C. State Bar No. 45661
David D. Larson, Jr.
N.C. State Bar No. 25659

6

410 N. Boylan Ave., Ste. 100
Raleigh, North Carolina 27603
Telephone: (919) 245-3116
Facsimile: (866) 734-0622
Email: swillingham@paynterlaw.com
Email: dlarson@paynterlaw.com

*Attorneys for Plaintiff*

# EXHIBIT A

**From:** Cory Tate
**Sent:** Wednesday, August 29, 2018 4:33 PM
**To:** 'rwinningedge1@gmail.com'
**Subject:** FW: 1991 Edition of NCSBC Vol I-C - Adoption of first NCAccessibility Code

Ms. Carter,

Please find below the email from Laurel Wright, the Chief Accessibility Code Consultant with the NC Dept. of Insurance, regarding accessible curb ramps and accessible parking spaces.

Regards,

**Cory Tate**
Chief Building Inspector
Town of Nags Head
Department Line: 252-441-7016
Direct line: 252-449-6043
Fax line: 252-441-4290
cory.tate@nagsheadnc.gov

**From:** Wright, Laurel [mailto:Laurel.Wright@ncdoi.gov]
**Sent:** Wednesday, August 29, 2018 8:33 AM
**To:** Cory Tate
**Subject:** 1991 Edition of NCSBC Vol I-C - Adoption of first NC Accessibility Code

Cory.

In reviewing the 1991 Vol I-C, the following code sections may be helpful:

- 3.1(b)(1) minimum clear width of 48" for an accessible route.
- 3.3(b) *where walks cross driveways or parking lots, they shall blend to a common level by means of curb-cuts or sloped areas whose gradient shall not exceed 12 inches vertical rise for each 12 feet horizontal run.*



Case 2:21-cv-00025-FL   Document 1   Filed 05/27/21   Page 9 of 11

- 3.4(b)(6) *Parking spaces identified for use by disabled/handicapped persons shall be at least 96 inches wide and shall have an adjacent access aisle that shall be a minimum 60 inches wide (the total of one space plus one access aisle shall be a minimum 13 feet)...such parking spaces shall have a slope not greater than ¼ inch per foot.*

Also attached is a handout from the US Dept of Justice addressing Restriping of Parking lots. Please note that on the back page it clearly states that the access aisle must be level, be the same length as the adjacent parking space it shares. It also states that ramps must not extend into the access aisle. This is consistent with the 1991 ADAAG language which stated in 4.6.3 *Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions.*

## Features of Accessible Parking Spaces for Cars



— **Sign with the international symbol of accessibility** mounted high enough so it can be seen while a vehicle is parked in the space.

If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.

accessible route (min. 36-inch width)

**Access aisle of at least 60-inch width** must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.

**Boundary of the access aisle** must be marked. The end may be a squared or curved shape.

Two parking spaces **may share an access aisle.**

| 96" min | 60" min | 96" min. |
| 2440 | 1525 | 2440 |

The photos you sent in the earlier email show a situation that did not comply when it was built and did not comply with the ADAAG which has a $75,000 violation, if someone were to file a complaint that the USDOJ elected to pursue.

If you have any questions, please let me know,
Best wishes,



Laurel W. Wright
**Chief Accessibility Code Consultant**
**Engineering & Codes Division**



**N.C. Department of Insurance**
**Office of State Fire Marshal**
1202 Mail Service Center
Raleigh, NC 27699-1202
919.647.0014

**Physical Address:** 325 N. Salisbury Street

Main: (919) 647-0000
Fax: (919) 715-0067
E-M: Laurel.Wright@ncdoi.gov
MBR: ANSI A117.1 Committee
TEL HRS: M-Th 8AM - 10AM

Click here to sign up for AccessUpdate Newsletter. Send a return confirmation or you will not be signed up.
Click here for NC State Bldg Codes

---

**From:** Cory Tate <cory.tate@nagsheadnc.gov>
**Sent:** Tuesday, August 28, 2018 3:01 PM
**To:** Wright, Laurel <Laurel.Wright@ncdoi.gov>
**Subject:** [External] Adoption of first NC Accessibility Code

CAUTION: External email. Do not click links or open attachments unless verified. Send all suspicious email as an attachment to Report Spam.

Hi Laurel,

When did NC first adopt the Accessibility Code?

I am investigating a complaint about a curb ramp serving a building constructed in Nags Head in 1996. I am trying to figure out what standard applied to this building when it was constructed.

The complaint, in a nutshell, is that a woman with mobility issues used the ramp, slipped off the edge, fell, and broke several bones. The walking surface on the ramp is 48 inches wide. It is contained within the access aisle of a marked accessible parking space. The edges of the ramp are tapered, but at an extremely steep slope. The rise from the parking area to the top of the sidewalk (at the top of the ramp) is 6.25 to 6.5 inches. I have included some pictures of the ramp in question. Would this curb ramp have met the code in effect in 1996?

Thanks for your help!

**Cory Tate**
Chief Building Inspector
Town of Nags Head
Department Line: 252-441-7016
Direct line: 252-449-6043
Fax line: 252-441-4290
cory.tate@nagsheadnc.gov